**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Jennifer Forlenza, individually and on behalf of all others similarly situated, | 1:22-cv-05278 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Herr Foods Incorporated, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.     Herr Foods Incorporated ("Defendant") manufactures, packages, labels, markets, and sells jalapeño poppers flavored cheese curls under the Herr's brand ("Product").



2.      A food's taste can come from (1) characterizing ingredients, (2) natural flavor, and/or (3) artificial flavor.

3.      Food ingredients are sources of nutritional value, while natural flavor refers to the "essential oil, oleoresin, essence or extractive" from fruits or vegetables "whose significant function [] is flavoring rather than nutritional," and artificial flavor is "any substance, the function of which is to impart flavor" from sources other than fruits or vegetables. 21 C.F.R § 101.22(a)(1), (3).

4.      According to research by Mintel, consumers have a hierarchy when it comes to their preferences for the source of a food's taste.

5.      The most preferred option is when the taste comes from a characterizing food ingredient, such as strawberry shortcake with real strawberries, followed by natural flavors and then artificial flavors.

6.      According to the Wall Street Journal, artificial flavors are ingredients of concern for consumers, in part because of the growing avoidance of artificial ingredients.[1]

7.      According to Paul Manning, chief executive officer and president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[2]

8.      The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[3]

9.      Mintel announced that consumer avoidance of artificial flavors is just as strong as

---

[1] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.
[2] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.
[3] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

their desire for natural flavors, in its Report, "Artificial: Public Enemy No. 1."[4]

10.     Surveys by Nielsen, New Hope Network, and Label Insight concluded that between sixty and eighty percent of the public seeks to avoid artificial flavors.

11.     The Product's primary or "characterizing" flavors are jalapeño and cheese, because the label makes "direct [] representations" about these ingredient through words, "Oven Baked With Real Cheese," "[Flavored] Cheese Curls," a picture of a ripe jalapeño, the inside of one of the snacks which appears to contain a whole jalapeño with cheese dripping out, the green background reflective of the color of jalapeños and the yellow-to-red coloring of "Jalapeño Poppers" with a flame above the tilde over the "n," referencing the spiciness and "hot" attributes of jalapeños. 21 C.F.R. § 101.22(i).

12.     Federal and identical state regulations require the Product to disclose the source of its characterizing jalapeño and cheese taste on the front label, i.e., from jalapeños and cheese, natural flavors from these or other natural sources, and/or artificial, synthetic sources. 21 C.F.R. § 101.22(i).

13.     The representations of "flavored [cheese curls]," cheese and/or jalapeños is false, deceptive and misleading by omitting that the Product's taste is due in part to artificial flavoring.

14.     By representing the Product as "flavored cheese curls" with pictures jalapeño and cheese and these words, consumers will expect the taste is from the identified ingredients and/or natural flavors derived from these ingredients.

15.     Though the ingredient list reveals the Product contains cheese and jalapeño

---

[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

ingredients through listing "Cheese Blend" and "Green Bell Pepper Powder," the seasoning ingredient contains "Artificial Flavors."

**INGREDIENTS:** CORN MEAL, VEGETABLE OIL (CONTAINS ONE OR MORE OF THE FOLLOWING: CORN, COTTONSEED, PALM, SUNFLOWER), CHEESE BLEND (MALTODEXTRIN, WHEY, SUNFLOWER OIL, CHEDDAR CHEESE [PASTEURIZED MILK, CHEESE CULTURE, SALT, ENZYMES], SALT, MONOSODIUM GLUTAMATE, SODIUM PHOSPHATE, BUTTER [CREAM, SALT], NATURAL FLAVOR, CITRIC ACID, LACTIC ACID, YELLOW 5, YELLOW 6, ENZYMES), SEASONING (MALTODEXTRIN, WHEY, SUGAR, DEXTROSE, SALT, SPICES, ONION POWDER, GARLIC POWDER, MONOSODIUM GLUTAMATE, GREEN BELL PEPPER POWDER, TORULA YEAST, MODIFIED TAPIOCA STARCH, SODIUM DIACETATE, CHIPOTLE PEPPER, DRIED PARSLEY, CITRIC ACID, SUNFLOWER OIL, MODIFIED CORN STARCH, DISODIUM INOSINATE AND DISODIUM GUANYLATE, SPICE EXTRACTS, PAPRIKA EXTRACT [COLOR], NATURAL AND ARTIFICIAL FLAVORS), SALT.

16. These added artificial flavors simulate, resemble and/or reinforce the characterizing flavor of jalapeños and cheese, which requires that "the name of the food on the principal display panel [Flavored Cheese Curls] [] be accompanied by the common or usual name(s) of the characterizing flavor[s]" and state, "Artificial Jalapeño and Cheese" or "Artificially Flavored Jalapeño and Cheese." 21 C.F.R. § 101.22(i)(2).

17. The label is additionally misleading owing to statements including "Jalapeño Poppers" and the images of two curls showing intact halves of jalapeños inside the outer shell from which cheese is dripping.

4



18.    Consumers will reasonably expect the Product to contain jalapeños filled with cheese inside an outer fried snack shell.

19.    However, the Product does not consist of intact jalapeños or any other peppers filled with cheese inside a fried shell, because the pepper ingredients are only part of the "Seasoning," listed as "Green Bell Pepper Powder [and] Chipotle Pepper."

**INGREDIENTS:** CORN MEAL, VEGETABLE OIL (CONTAINS ONE OR MORE OF THE FOLLOWING: CORN, COTTONSEED, PALM, SUNFLOWER), CHEESE BLEND (MALTODEXTRIN, WHEY, SUNFLOWER OIL, CHEDDAR CHEESE [PASTEURIZED MILK, CHEESE CULTURE, SALT, ENZYMES], SALT, MONOSODIUM GLUTAMATE, SODIUM PHOSPHATE, BUTTER [CREAM, SALT], NATURAL FLAVOR, CITRIC ACID, LACTIC ACID, YELLOW 5, YELLOW 6, ENZYMES), SEASONING (MALTODEXTRIN, WHEY, SUGAR, DEXTROSE, SALT, SPICES, ONION POWDER, GARLIC POWDER, MONOSODIUM GLUTAMATE, GREEN BELL PEPPER POWDER, TORULA YEAST, MODIFIED TAPIOCA STARCH, SODIUM DIACETATE, CHIPOTLE PEPPER, DRIED PARSLEY, CITRIC ACID, SUNFLOWER OIL, MODIFIED CORN STARCH, DISODIUM

INOSINATE AND DISODIUM GUANYLATE, SPICE EXTRACTS, PAPRIKA EXTRACT [COLOR], NATURAL AND ==ARTIFICIAL FLAVORS==), SALT.

20.     Since these ingredients are listed as part of the "Seasoning," this means they are not present in their whole or intact form inside the fried shells as seasoning is used to denote a food's flavoring and taste.

21.     The Product contains other representations and omissions which are false and misleading.

22.     The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

23.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

24.     As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $2.79 for 3 oz, though other sizes may be sold for one dollar at certain dollar stores, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

25.     Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

26.     The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

27.     Plaintiff is a citizen of Waukegan, Illinois, Lake County.

28.     Defendant is a Pennsylvania corporation with a principal place of business in Nottingham, Pennsylvania, Chester County.

29.     The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

30.     The members of the proposed classes Plaintiff seeks to represent are more than 100, because the Product is sold at thousands of locations, including grocery stores, convenience stores, dollar stores, drug stores, big box stores, and online, in the States of the proposed classes.

31.     Venue is in this District and assignment is in the Eastern Division because Plaintiff resides in Lake County, and the representations and omissions, and her reliance on them and awareness they were misleading occurred here.

Parties

32.     Plaintiff Jennifer Forlenza is a citizen of Waukegan, Illinois, Lake County.

33.     Defendant Herr Foods Incorporated is a Pennsylvania corporation with a principal place of business in Nottingham, Pennsylvania, Chester County.

34.     Defendant is a national manufacturer and seller of potato chips and other salty snack foods.

35.     Herr's location is in the area of Pennsylvania referred to as the "Snack Belt," due to the numerous manufacturers of salty snacks founded in this area.

36.     The reason this area has numerous such companies goes back to its earliest settlers, known as the Pennsylvania Dutch.[5]

37.     As descendants of early German immigrants to Pennsylvania who arrived before 1800 to escape religious persecution in Europe, this hardy group brought many of their customs – and foods – to America.

---

[5] In 18th and 19th century English, "Dutch" was used to refer to the broad Germanic region, encompassing modern-day Netherlands, Germany, Belgium, Austria and Switzerland.

38.    One of these foods, the pretzel, originated in southern Germany, and was a biscuit made of flour, water, salt, and yeast that is kneaded, shaped into a noodle, twisted into a knot, and baked.

39.    Likewise for potato chips, which had reached Germany via England, though other accounts describe this food as distinctly American.

40.    Nineteenth-century potato chips were hand-peeled, sliced, and cooked in kettles and could originally only be made with chipping potatoes, which were native and abundant to Pennsylvania.

41.    Plaintiff read and relied on "Oven Baked With Real Cheese," "Flavored Cheese Curls," a picture of a ripe jalapeño and cheese dripping out of one of the snacks, the green background reflective of the color of jalapeños and the yellow-to-red coloring of "Jalapeño Poppers" with a picture of a flame referencing the spiciness and "hot" attributes of jalapeños above the tilde over the "n" and believed the Product got its jalapeño and cheese taste from these ingredients and/or natural flavorings from these ingredients.

42.    Plaintiff is part of the majority of consumers who prefer foods which get their taste from their ingredients, followed by natural flavoring, and tries to avoid artificial flavors, based on the belief that such foods with artificial flavor are less healthy than those without them and the use of synthetic chemicals to make artificial flavors.

43.    Plaintiff did not expect the jalapeño and/or cheese taste was from artificial jalapeño and/or cheese flavoring because, in her experience, this is the type of information typically disclosed to consumers on the front label.

44.    Plaintiff expected the Product to contain jalapeños inside of the fried shell, and contain cheese.

45.     Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

46.     Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Dollar General, 2205 N Lewis Ave Waukegan, IL 60087, between 2020 and 2022, and/or among other times.

47.     Plaintiff bought the Product at or exceeding the above-referenced price.

48.     Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

49.     Plaintiff paid more for the Product than she would have paid had she known the representations were false and misleading, as she would not have bought it or paid less.

50.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its composition.

51.     Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar snacks which promote their characterizing ingredients and fail to disclose added artificial flavoring which simulates, resembles, and/or enhances their characterizing flavors, because she is unsure whether those representations are truthful.

<u>Class Allegations</u>

52.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in

9

the States of Alabama, New Jersey, Montana, Alaska, Texas, Arizona, New Mexico, Mississippi, Utah, Nebraska, South Carolina, Tennessee, and Virginia who purchased the Product during the statutes of limitations for each cause of action alleged.

53. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

54. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

55. Plaintiff is an adequate representative because her interests do not conflict with other members.

56. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

57. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

58. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

59. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>("ICFA"), 815 ILCS 505/1, et seq.</u>

60. Plaintiff incorporates by reference all preceding paragraphs.

61. Plaintiff relied on the representations and omissions to believe the Product contained the characterizing ingredient of jalapeños in its food form instead of as seasoning, and/or that it did not contain artificial flavoring which simulated, resembled, and/or enhanced its jalapeño and

cheese taste.

62. Plaintiff and class members were damaged by paying more for the Product than they would have if they knew the present facts.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

63. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

64. The members of the Consumer Fraud Multi-State Class were harmed in the same manner as Plaintiff, and reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statutes invoked by Plaintiff.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

65. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that the Product contained the characterizing ingredient of jalapeños in its food form instead of as seasoning, and/or that it did not contain artificial flavoring which simulated, resembled, and/or enhanced its jalapeño and cheese taste.

66. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

67. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as foods which got their characterizing taste from food ingredients instead of added

seasoning and flavoring, and foods without artificial flavoring which simulated, resembled, and/or enhanced a food's characterizing flavors, and developed its marketing and labeling to directly meet those needs and desires.

68.     The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant the Product contained the characterizing ingredient of jalapeños in its food form instead of as seasoning, and/or that it did not contain artificial flavoring which simulated, resembled, and/or enhanced its jalapeño and cheese taste.

69.     Defendant affirmed and promised that the Product contained the characterizing ingredient of jalapeños in its food form instead of as seasoning, and/or that it did not contain artificial flavoring which simulated, resembled, and/or enhanced its jalapeño and cheese taste.

70.     Defendant described the Product so Plaintiff believed it contained the characterizing ingredient of jalapeños in its food form instead of as seasoning, and/or that it did not contain artificial flavoring which simulated, resembled, and/or enhanced its jalapeño and cheese taste, which became part of the basis of the bargain that it would conform to its affirmations and promises.

71.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

72.     This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Herr's brand, one of the oldest and highly rated sellers of salty snacks.

73.     Plaintiff recently became aware of Defendant's breach of the Product's warranties.

74.     Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

75.     Defendant received notice and should have been aware of these issues due to

complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

76. The Product did not conform to its affirmations of fact and promises.

77. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained the characterizing ingredient of jalapeños in its food form instead of as seasoning, and/or that it did not contain artificial flavoring which simulated, resembled, and/or enhanced its jalapeño and cheese taste.

78. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained the characterizing ingredient of jalapeños in its food form instead of as seasoning, and/or that it did not contain artificial flavoring which simulated, resembled, and/or enhanced its jalapeño and cheese taste, and relied on Defendant's skill and judgment to select or furnish such a suitable product.

Negligent Misrepresentation

79. Defendant had a duty to truthfully represent the Product, which it breached.

80. This duty is based on its position, holding itself out as having special knowledge and experience in this area, custodian of the Herr's brand, a leading seller of salty snacks.

81. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant, a nationally renowned and iconic brand.

82. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

<u>Fraud</u>

83.    Defendant misrepresented and omitted that the Product contained the characterizing ingredient of jalapeños in its food form instead of as seasoning, and/or that it did not contain artificial flavoring which simulated, resembled, and/or enhanced its jalapeño and cheese taste.

84.    Defendant was aware of consumer preferences for foods which get their taste from characterizing ingredients, followed by natural flavor, and knew consumers try and avoid foods with artificial flavor.

85.    The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

<u>Unjust Enrichment</u>

86.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3.  Awarding monetary, statutory, and/or punitive damages pursuant to law;

4.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated: September 27, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com